UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHARL-HO PARK,

                        Plaintiff,

v.                                                        5:06-CV-0843
                                                          (GTS/GJD)
LESLIE N. REIZES;

                        Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

WIGGINS, KOPKO, LLP                  WALTER J. WIGGINS , ESQ.
  Counsel for Plaintiff
308 N. Tioga St.
Ithaca, NY 14850

WILSON, ELSER, LLP                    PETER A. LAURICELLA, ESQ.
  Counsel for Defendant
677 Broadway - 9th Floor
Albany, NY 12207

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM DECISION and ORDER

      Currently before the Court in this diversity action asserting a claim of legal malpractice, filed by Charl-Ho Park ("Plaintiff"), is a motion for summary judgment filed by Leslie N. Riezes ("Defendant"). (Dkt. No. 23, Part 1.) For the reasons set forth below, Defendant's motion is granted.

I.         RELEVANT BACKGROUND

    A.         **Plaintiff's Claims**

Liberally construed, Plaintiff's Complaint alleges that Defendant committed legal malpractice in the following ways: (1) he improperly advised Plaintiff of his legal rights regarding the padlocking of the premises in question; (2) he improperly advised Plaintiff of the amount that Plaintiff's tenants needed to pay to cure a default; (3) he failed to assert affirmative defenses and counterclaims on behalf of Plaintiff in an action filed against Plaintiff; and/or (4) he breached his professional duty by abandoning Plaintiff on the eve of trial, thereby causing Plaintiff to lose that action. (Dkt. No. 1 [Plf.'s Compl.].) Familiarity with the other factual allegations supporting Plaintiff's malpractice claim is assumed in this Decision and Order, which is intended primarily for review by the parties.

    B.         **Undisputed Material Facts**

In 1998, Defendant was an attorney practicing law in New York and Florida. At the time, Plaintiff retained Defendant in New York to represent him in two related matters: (1) the sale of his convenience store/gas station business to Ga Young Lee and Chea Lee; and (2) the preparation of documents to lease to the Lees the building where the business is located, and various property used in the operation of the business. Approximately three years after the sale of the business, Plaintiff noticed that the Lees were rarely opening the store and were late on various payments owed to Plaintiff. Plaintiff also had some concerns over the security of the property while the Lees were absent. For that reason he asked his wife to padlock the premises. After the padlocking, Plaintiff relayed the story of the Lees' disappearance to Defendant. As a result, Defendant prepared a Three-Day Notice to Tenants, stating that the Lees' defaults gave

Plaintiff the right to terminate the lease and seek eviction.  Thereafter, Plaintiff and Mr. Lee met to discuss settlement of the issues between them.  However, a few weeks later, the agreed-upon settlement fell through.  Plaintiff then operated the Lees' business at a profit for approximately two years, earning a net income of $79,639.00.  The Lees subsequently commenced an action against Plaintiff to recover that income.  In that action, Plaintiff never filed a counterclaim against the Lees.  Twenty days before trial, Defendant withdrew as counsel for Plaintiff, arranging for substitute counsel.  The Lees were successful at trial.  (*Compare* Dkt. No. 23, Part 3 [Def.'s Rule 7.1 Statement of Material Facts] *with* Dkt. No. 26, Part 3 [Plf.'s Counter-Statement of Material Facts].)

Familiarity with the remaining undisputed material facts of this action, as well as the disputed material facts, as set forth in the parties' Rule 7.1 Statement and Rule 7.1 Response, is assumed in this Decision and Order, which (again) is intended primarily for review by the parties.  (*Id*.)

      **C.**     **Defendants' Motion**

Generally, in support of his motion for summary judgment, Defendant argues as follows: (1) he did not breach any duty to Plaintiff (thereby causing Plaintiff any harm) by failing to advise him against padlocking the premises in question; (2) he did not breach any duty to Plaintiff (thereby causing Plaintiff any harm) by providing advise regarding the amount that the Lees owed Plaintiff to cure the default; (3) he did not breach any duty to Plaintiff (thereby causing Plaintiff any harm) by failing to assert a counterclaim before trial; and (4) he did not breach any duty to Plaintiff (thereby causing Plaintiff any harm) by withdrawing as counsel 20 days before trial.  (*See generally* Dkt. No. 23, Part 2 [Def.'s Memo. of Law].)

In Plaintiff's response to Defendant's motion for summary judgment, Plaintiff disputes each of these four arguments.  (*See generally* Dkt. No. 26, Part 1[Plf.'s Response Memo. of Law].)

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's recent decision in *Pitts v. Onondaga County Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

### C.     Legal Standards Governing Plaintiff's Claims

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for review by the parties.  (*See* Dkt. No. 23, Part 3 [Def.'s Mem. of Law]; Dkt. No. 26, Part 1 [Plf.'s Response Mem. of Law]; Dkt. No. 27 [Def.'s Reply Mem. of Law].)

## III.    ANALYSIS

### A.     Whether Failing to Advise Plaintiff Against Padlocking the Premises Constituted Malpractice

As stated above in Part I.C. of this Decision and Order, Defendant seeks the dismissal of Plaintiff's malpractice claim to the extent that it is based on Defendant's alleged failure to advise

Plaintiff against padlocking the premises in question. Defendant reasons that there is no admissible evidence from which a reasonable factfinder could conclude that Defendant breached a duty to Plaintiff (thereby causing Plaintiff harm) by failing to advise Plaintiff against padlocking the premises. Based on the current record, the Court agrees.

Specifically, the Court finds that whatever issue of fact may exist with regard to the padlocking incident is not material to the issue of whether Defendant breached a legal duty to Plaintiff. The Court makes this finding for two reasons.

First, whether Plaintiff notified Defendant that his wife had padlocked the area is immaterial because Plaintiff admitted in his deposition that he asked his wife to lock the store for security reasons, as opposed to locking the store for the purpose of keeping the Lees from entering. (Dkt. No. 23, Part 10, at 30-31 [Plf.'s Deposition].) Defendant properly notes that New York courts recognize a landlord's padlocking or changing of locks as an eviction only when the landlord does so for the purpose of keeping a tenant out.[1] As a result, even assuming that Defendant owed Plaintiff a duty to advise him with regard to whether to padlock the premises in question, Defendant would have had a reasonable basis for not advising Plaintiff to remove the lock. As a result, Defendant did not breach any duty to Plaintiff with regard to the padlocking incident.

Second, even assuming, for the sake of argument, that Defendant's failure to advise against padlocking the store was a breach of a duty, Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant's breach caused

---

[1] *See, e.g., C.E. Towers Co. v. Trinidad and Tobago Airways Corp.*, 903 F. Supp. 515, 528 (S.D.N.Y. 1995) (noting that it would be illogical to consider the changing of locks as an eviction when done with a *bona fide* reason other than to keep a tenant from entering the premises).

Plaintiff any harm. *Reibman v. Senie*, 756 N.Y.S.2d 164, 165 (N.Y. App. Div. 1st Dept. 2003) (the failure to establish proximate cause-that but for the attorney's actions, the client would have prevailed in the matter-mandates the dismissal of a legal malpractice action). The Court reaches this conclusion for two reasons. First, Plaintiff admitted in his deposition that Mr. Lee later requested that Plaintiff keep the padlocks on the store for security reasons. (Dkt. No. 23, Part 10, at 60 [Plf.'s Deposition].) Second, the Trial Court's decision indicates that Plaintiff's actions in operating the tenant's business for his own profit was the true cause of the Lee's success at trial (and not the initial padlocking of the doors). (Dkt. No. 23, Part 18, at 15 [Trial Decision].) Both these facts sever the chain of causation that could have connected the alleged breach of duty on the part of Defendant with the ultimate harm to Plaintiff (later losing to the Lee's at trial).

For these reasons, the Court grants Defendant's motion for summary judgment to the extent that it requests the dismissal of Plaintiff's malpractice claim premised on the failure to advise against padlocking the doors.

### B. Whether Defendant's Advice to Plaintiff Regarding Cure Amounts Constituted Malpractice

As stated above in Part I.C. of this Decision and Order, Defendant seeks the dismissal of Plaintiff's malpractice claim to the extent that it is based on Defendant's allegedly improper advice regarding the amounts owed to cure the default. Defendant argues that there is no admissible evidence from which a reasonable factfinder could conclude that Defendant breached a duty to Plaintiff (thereby causing Plaintiff harm) by advising Plaintiff as to the amount that the Lees owed to Plaintiff. Based on the current record, the Court agrees.

As an initial matter, the Court notes that there may be a genuine issue of fact as to

whether Defendant even gave advice to Plaintiff regarding amount needed to cure the default.[2] In any event, whether or not Defendant gave this advice or calculated the amount owed (or even whether the calculation was incorrect) is immaterial to Defendant's motion for summary judgment. This is because, just as Plaintiff has done with regard to the issue of the padlocking of the doors discussed above in Part III.A. of this Decision and Order, Plaintiff has failed to provide admissible evidence to meet the burden needed to survive summary judgment on the element of causation in his claim regarding the default claim. As stated above, the true cause of Plaintiff's loss at trial was his reopening of the Lees store and the operation of that store at a profit. (*See* Dkt. No. 23, Part 18, at 15 [Trial Decision].) Simply stated, Plaintiff has not adduced admissible evidence from which a rational factfinder could conclude that any advice that Defendant gave him with regard to the cure amount in any way caused Plaintiff harm.

For these reasons, the Court grants Defendant's motion for summary judgment also to the extent that it requests the dismissal of Plaintiff's malpractice claim premised on Defendant's advice to Plaintiff regarding the amount owed to cure the default.

### C. Whether Defendant's Failure to Assert a Counterclaim on Behalf of Plaintiff Constituted Malpractice

As stated above in Part I.C. of this Decision and Order, Defendant seeks the dismissal of Plaintiff's malpractice claim to the extent that it is based on Defendant's failure, before trial, to assert a counterclaim based on the Lees' defaults under the Note and Security Agreement.

---

[2] On one hand, Plaintiff argues that Defendant gave him improper advice on the amount needed to cure the default, which he then demanded from the Lees. (*See* Dkt. No. 26, Part 1, at 19-21 [Plf.'s Opp. Mem. of Law, quoting record evidence].) In contrast, Defendant argues that Plaintiff was responsible for calculating the amount needed to cure the default and Plaintiff then independently negotiated with the Lees (with little success) to cure that default. (*See* Dkt. No. 23, Part 2, at 27-28 [Def.'s Mem. of Law, citing record evidence].)

Defendant argues that there is no admissible evidence from which a rational factfinder could conclude that this failure to assert a counter claim constituted a breach of a duty owed to Plaintiff (thereby causing Plaintiff harm). Based on the current record, the Court agrees.

In opposing Defendant's motion for summary judgment, Plaintiff relies on the fact that there is a genuine issue as to whether Defendant notified Plaintiff that filing a counterclaim *could* cost more money and time or that it *would* cost more money and time.[3] However, even assuming that Defendant erroneously notified Plaintiff that filing a counterclaim *would* cost more money (rather than notifying him that it merely *could* cost more money and time), Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that such an error caused him any harm. "The object of compensatory damages is to make the injured client whole. Where the injury suffered is a loss of a cause of action, the measure of damages is generally the value of the claim lost." *Campagnola v. Mulholland, Minion and Roe*, 76 N.Y.2d 38, 42 (N.Y. 1990). The Court notes that Plaintiff has specifically failed to respond to Defendant's assertion (or justify his own admission) that Plaintiff was allowed to (and eventually did) file this counterclaim as an independent action. (Dkt. No. 23, Part 2, at 26 [Def.'s Mem. of Law]; Dkt. No. 23, Part 11, at 34-35 [Plf.'s Deposition].)

---

[3] The Court notes that, in his Response to Defendant's Statement of Fact Number 52, Plaintiff also attempts to create an issue regarding whether Defendant ever conferred with Plaintiff about whether to interpose a counterclaim. (*See* Dkt. No. 26, Part 3, at 13 [Plf.'s Counter-Statement of Material Facts].) However, Plaintiff responds to Defendant's subsequent two assertions by laying out the subject matter of that conversation (which he previously argued did not take place). (*Id.*) Based on these admissions, and the admissions in Plaintiff's deposition transcript, this Court deems as undisputed, for the purpose of summary judgment, the fact that, Defendant notified Plaintiff before trial of the possibility of filing a counterclaim.

For these reasons, the Court grants Defendant's motion for summary judgment also to the extent that it requests the dismissal of plaintiff's malpractice claim premised on Defendant's failure to assert a counterclaim before trial.

### D. Whether Defendant's Withdrawal as Counsel Constituted Malpractice

As stated above in Part I.C. of this Decision and Order, Defendant seeks the dismissal of Plaintiff's malpractice claim to the extent that it is based on Defendant's withdrawal as counsel twenty days before trial, because there is no record evidence from which a rational factfinder could find that Defendant breached a professional duty owed to Plaintiff (thereby causing Plaintiff harm) in withdrawing as Plaintiff's counsel before trial. Based on the current record, the Court agrees.

Defendant's withdrawal as counsel was not only reasonable but necessary for him to avoid liability for breaching his professional duty. *See Tru-Bite Labs, Inc. v. Ashman*, 388 N.Y.S.2d 279, 280 (N.Y. App. Div. 1st Dept. 1976) (noting that, where a question arises as to the possibility of an attorney becoming a fact witness, "doubts should be resolved in favor of the lawyer testifying and against his continuing as an advocate"). While at first glance it might appear that Defendant impulsively withdrew as counsel "on the eve of trial," in fact that withdrawal–which occurred nearly three weeks before trial–was based on a telephone call with opposing counsel approximately a month before trial, which led him to reasonably believe he needed, for ethical reasons, to substitute himself as counsel. (Dkt. No. 23, Part 24, at 58-59 [Def.'s Deposition].) Specifically, in that telephone conversation, opposing counsel made clear his intention to call Mr. Lee as a fact witness regarding a conversation that Mr. Lee allegedly had with Defendant. (*Id*. at 59.) In short, Defendant has clearly and reasonably explained that, at the

time, he believed that this new information created a strong possibility that he would need to counter that testimony with his own.  (*Id.*)[4]

Plaintiff's only response to this record evidence is his argument that the contents of this conversation are speculative.  (Dkt. No. 26, Part 3, at 13-14 [Plf.'s Counter-Statement of Material Facts].)  However, the rules governing attorney withdrawal are triggered by the *possibility* of being called as fact witnesses.  *Lolito v. Biden*, No. 600045/08, 2007 WL 3101246, at *6 (N.Y. Sup. Ct., New York County Sept. 10, 2007) ("[The rule] requires withdrawal where it is apparent that the attorney's testimony 'is or *may* be prejudicial to the client.'") (emphasis added).[5]  Attorneys must make this determination based on their perceptions of the *appearance* that they ought to be called as a fact witness.  This decision cannot be dissected as though the attorney knew exactly what would occur in the future, and therefore, must be based on a reasonable degree of his or her estimation in advance.

Even if the Court were to find that Defendant could (and should) have known earlier that disqualification was necessary, the Court finds that Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that, but for Defendant's substitution, Plaintiff would have prevailed at trial.  *Reibman*, 756 N.Y.S.2d at 165.  Although Plaintiff notes that his new attorney, Mark Kenyon, would have liked more time to prepare for

---

[4] The Court notes that it is undisputed that, at the time, Defendant explained to Plaintiff why he needed to disqualify himself, and he obtained written consent from Plaintiff to do so.  (Dkt. No. 26, Part 3, at 14, ¶ 57 [Plf.'s Counter-Statement of Material Facts]; Dkt. No. 23, Part 15 [Stipulation to Change Attorney].)

[5] *See also* 22 NYCRR 1200.21 (codifying DR 5-102, in effect during time in question, which speaks of a "contemplat[ed]" conflict in which a lawyer "ought to be called as a witness" and/or "may be called as a witness").

trial, Plaintiff fails to acknowledge that Mr. Kenyon, an experienced trial attorney at the time in question (who had tried numerous landlord/tenant disputes) testified in his deposition that he was fully aware of the facts of the case and fully prepared for the trial. (Dkt. No. 23, Part 12, at 61-63 [Kenyon Deposition].) Mr. Kenyon even stated that the outcome of the trial would not have been different if he were "Clarence Darrow and had six years" to prepare. (*Id*. at 61-62 [Kenyon Deposition].)

For these reasons, the Court grants Defendant's motion for summary judgment also to the extent that it requests dismissal of Plaintiff's malpractice claim premised on Defendant's withdrawal before trial.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 23) is **GRANTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** in its entirety. The clerk is directed to enter judgment in favor of the defendant.

Dated: December 15, 2009
       Syracuse, New York

*[signature]*
Hon. Glenn T. Suddaby
U.S. District Judge